NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0293n.06

Case No. 15-4036

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 02, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DONALD RICHARDSON, on behalf of Himself and on behalf of his minor child, K.R., | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| HUBER HEIGHTS CITY SCHOOLS BOARD OF EDUCATION, | ) ) ) | |
| Defendant-Appellee. | ) ) ) | O P I N I O N |

BEFORE:     COLE, Chief Judge; CLAY and GIBBONS, Circuit Judges.

COLE, Chief Judge.   Plaintiff Donald Richardson, on his own behalf and that of his minor son, K.R., brings this action under 42 U.S.C. § 1983 against the Huber Heights City Schools Board of Education (the "Board").  Richardson claims that K.R. was sexually assaulted by fellow students with the tacit permission of an assistant baseball coach, and maintains that the Board violated K.R.'s constitutional rights by creating, and being deliberately indifferent to, a culture of sexualized violence at Wayne High School.  The district court granted summary judgment for the Board.  Because we find that Richardson has failed to establish municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), we affirm.

## I.     FACTS AND PROCEDURAL HISTORY

In November 2010, K.R. was a freshman at Wayne High School in Huber Heights, Ohio, and a prospective member of the baseball team.  Members of the team participated in regular

voluntary after-school weightlifting sessions at the high school gym. An argument involving K.R. at one such session drew the attention of Assistant Coach Jonathan Soukup. Within a few days of the incident, Soukup approached B.C, a junior at the school and a member of the baseball team, and inquired about K.R. Soukup allegedly told B.C. to "take care of it." Soukup denies making this statement.

The assault on K.R. took place on November 22, 2010. K.R. left the weight room to get a drink of water in the hallway and B.C., together with three other students, including defendant R.M., followed him. As K.R. was returning, R.M. put his hand on K.R.'s shoulder, shoved him into a corner, and held him down. B.C. then inserted his finger into K.R.'s anus for around 20 to 30 seconds. K.R. did not report the incident until, in tears, he informed his parents late that night.

The next morning, K.R.'s parents met him at the school, and together they reported the incident to Vice Principal Erica Ford. K.R.'s mother testified that Ford told the family that "this has been happening, but no one would come forward." Ford denies making this statement, and further denies that she had knowledge that similar incidents had ever occurred at the school.

As part of their investigation of the incident, school officials interviewed the students involved and reviewed a video surveillance tape which partially captured the incident via a camera in the hallway. Law enforcement ultimately arrested B.C. and R.M. and charged them with rape. Wayne High School Athletic Director Jay Minton also informally interviewed the head coaches at the school regarding hazing and bullying, but testified that no coaches were aware of any such issues.

B.C., R.M., and the two other students who observed the incident in the hallway were suspended. A juvenile court found B.C. and R.M. guilty of the reduced charges of assault, barred them from playing baseball that year, and ordered them not to have any contact with K.R.

Critical to Richardson's claim against the Board is testimony regarding what he characterizes as an "environment of physical abuse and bullying" in the Huber Heights City Schools around this time. Richardson draws heavily on the testimony of several Wayne students describing various forms of male-on-male bullying, including the striking of fellow students in the genital region in order to inflict pain. Minton testified that a variant of this sort of inappropriate touching was once "rampant" at the high school. The students involved in this incident testified that the touching infrequently happened in front of a teacher or coach, and students would often choose "unsupervised areas and times," or when coaches were present but their focus was elsewhere. None of these students was aware of a time when someone had reported an instance of inappropriate touching, but they nevertheless viewed the touching as "a very common thing." Indeed, B.C. testified that unwanted sexualized touching of all types was commonplace and "still going on to this day." One student, C.M., testified that after K.R.'s reporting of this incident, inappropriate touching drastically declined.

School officials insisted that they were not aware of any unwanted sexualized touching and had no knowledge of a "culture of hazing" or other physically aggressive conduct in the hallways of Wayne High School. The official policy of the district was that horseplay was not tolerated, and the student code of conduct prohibited fighting, violence, harassment, intimidation, bullying, hazing, and "unwelcome sexual conduct." At least one of the students involved in this incident agreed that teachers would not tolerate any bullying or hazing, and indeed when the

school had, on previous occasions, become aware of instances of inappropriate touching, it acted to curb such behavior.

Richardson brought claims against the Board under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, as well as under 42 U.S.C. § 1983, together with common-law tort claims against B.C. and R.M. These tort claims were settled out of court by Richardson, B.C., and R.M.

Upon cross-motions for summary judgment, the district court found for the Board. Richardson does not appeal the district court's dismissal of his Title IX claim, and so only his § 1983 claim remains.

## II.    STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014). Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III.    DISCUSSION

Richardson's case hangs on a theory of "state-created danger" by way of Coach Soukup's "take care of it" comment. Generally, the Due Process Clause does not impose a duty on a school to protect students from harm inflicted by private actors, such as their classmates. *See*

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). But "when the State 'cause[s] or greatly increase[s] the risk of harm to its citizens . . . through its own affirmative acts,' it has established a 'special danger' and a duty to protect its citizens from that risk." *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006) (alteration in original) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). This exception applies where a state actor "creates a dangerous situation or renders citizens more vulnerable to danger." *Jasinski v. Tyler*, 729 F.3d 531, 538–39 (6th Cir. 2013) (internal quotation marks and citation omitted).

Yet, a danger created by a state actor is not alone enough to hold the Board liable. "Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*"; rather, "[a] plaintiff may only hold a local government entity liable under § 1983 for the entity's own wrongdoing." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (citing *Monell*, 436 U.S. at 692–94); *cf. Caldwell v. City of Louisville*, 120 F. App'x 566, 570–76 (6th Cir. 2004) (applying *Monell* first to establish municipal liability, and then undertaking state-created danger analysis). To establish liability for the *Board*, Richardson must show "that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." *Doe v. Claiborne Cty.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 690–91). Such a "custom" must be "so permanent and well settled" as to have the force of law. *Monell*, 436 U.S. at 691. Richardson stumbles at this second stage.

## A. STATE-CREATED DANGER

A plaintiff proceeding under a state-created danger theory of liability must show: (1) "an affirmative act by the State that either created or increased the risk" that he would be "exposed to

private acts of violence"; (2) a "special danger" to him created by the state action, "as distinguished from a risk that affects the public at large"; and (3) "the requisite state culpability to establish a substantive due process violation." *Jasinski*, 729 F.3d at 539 (quotation omitted). The third prong here amounts to deliberate indifference, which this court has "equated . . . with subjective recklessness"; that is, the state official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 469 (6th Cir. 2006) (quotation marks omitted). Recklessness can be "proven circumstantially by evidence showing that the risk was so obvious that the official had to have known about it." *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003).

Richardson argues that Coach Soukup's "take care of it" comment satisfies the first two prongs. This statement, he asserts, "authorized [B.C.] to handle [K.R.] and thus initiated the confrontation," and these actions placed K.R. "specifically at risk, separate and distinct from a risk that affects the public at large."

We agree. Regarding the first prong, whether Coach Soukup actually told B.C. to "take care of it" is a disputed fact; a jury could credit B.C. and find that Soukup gave such a directive. But, more to the point, although Soukup did not specifically tell B.C. *how* to "take care of it," a jury could further conclude that these words could lead B.C. and the other three students to believe that they had their coach's implicit permission, as upperclassmen and "team leaders," to resolve problems by whatever means they felt most appropriate—including the sort of action taken here. Significant evidence exists to support a jury's conclusion that some coaches at Wayne High School, or at least Coach Soukup, tolerated a culture of student-on-student hazing in order to encourage team obedience and respect. Indeed, the students involved in the incident

believed that their actions would "set a tone" for being "part of th[e] team." And such was B.C.'s specific understanding that day: he believed his actions would serve "kind of like an attitude adjustment," to "calm everything back down," and that he acted "as part of [his] responsibility as an upperclassman on the baseball team." He explained that although Coach Soukup "didn't say specifically what to do," B.C. assaulted K.R. because, "in past experience, that's what happened to [him]."

With regard to the second prong, should a jury credit B.C.'s version of events, it would be only a short step for the jury to conclude that Soukup's remark created a special danger, or increased the risk, for K.R., distinguished from that faced by the students generally. The Board's suggestion that "[a]ny member of the public at large may risk some sort of violent response" after swearing at someone, as K.R. is alleged to have done, denies reality: no general member of the public was singled out for special punishment.

As for the third prong, deliberate indifference, both parties improperly elide the distinction between knowledge by the school *Board* and by school *officials*. State-created danger liability begins, first, with the state actor. *See, e.g.*, *McQueen*, 433 F.3d at 463, 469 (finding that the plaintiff had "failed to produce any evidence showing that [the teacher] acted with deliberate indifference"). Richardson primarily argues that bullying and hazing were common at Wayne, such that the risk created by Soukup's comment "was so obvious" that he must have understood it. *See Bukowski*, 326 F.3d at 710. The Board responds that the evidence shows merely "some horseplay," which it took steps to correct. Disparaging Richardson's claim as "a utopian exercise in wishful thinking," the Board essentially argues that "kids are going to be kids."

That may be true. But a jury would also be justified in concluding that school officials turned a blind eye to hazing at Wayne—particularly within its athletic programs—to the extent

that a comment from a coach inviting upperclassmen to "take care of" a problem elicited sexual assault as a *preferred alternative* to outright violence. Although a jury could find that Soukup may not have precisely envisioned this incident, the evidence supports the inference that school officials could not have been unaware of this culture of student leadership via bullying, and the risk it posed.

## B. MUNICIPAL LIABILITY

Nevertheless, Richardson's task is not complete. Municipal lability will not attach absent evidence sufficient to "show that the need to act is so obvious that the School Board's 'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference." *Doe*, 103 F.3d at 508 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Richardson must demonstrate:

> (1) the existence of a clear and persistent pattern of . . . abuse by school employees; (2) notice or constructive notice on the part of the School Board; (3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the School Board's custom was the "moving force" or direct causal link in the constitutional deprivation.

*Id.* (citing *City of Canton*, 489 U.S. at 388–89).

Richardson offers no argument or evidence in support of municipal liability. With regard to the first three prongs, even assuming a jury accepts that there was an "environment of physical abuse and bullying" at Wayne, Richardson must still show "a clear and persistent pattern of abuse" by school employees—not merely by fellow students—to prevail, and that the Board had notice of it. *Id.* He fails. Moreover, Richardson cannot show that the Board acted with deliberate indifference. In fact, there is evidence of the school's previous, successful responses to instances of bullying or hazing by students. Further, after the incident, K.R.'s assailants were

swiftly punished, and inappropriate touching became nearly non-existent afterward.  Even if we regard the Board's reactions to reports of abuse as insufficient, more is required: "'[d]eliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." *Id.*

Critically, Richardson does not attempt to explain the fourth prong of the *Doe* test—how the Board's "custom" was the "moving force" or direct causal link of his injury.  *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364–65 (6th Cir. 1993) (a plaintiff must show "that the particular injury was incurred because of the execution of that policy.").  This element is "a causation inquiry," requiring a demonstration of both "cause in fact" as well as "proximate cause." *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007). Even assuming that Richardson can show that the Board's inaction and indifference to the culture of bullying at Wayne High School was a "but for" cause of K.R.'s injury, he cannot prove proximate cause—that is, he cannot show that "it was reasonably foreseeable that the complained of harm would befall [K.R.] as a result of the [Board's] conduct." *Id.* at 609.

Put simply, there is no evidence in the record that the Board could foresee that Soukup or any coach at Wayne would authorize upperclassmen to sexually assault underclassmen as a method of reinforcing team discipline.  *Cf. id.* at 610.  No testimony, beyond a brief discussion of a single coach on the *basketball* team, has accused coaches of fostering such behavior. Accordingly, we need not draw the unreasonable inference that the Board should have foreseen it.  *Cf. Powers*, 501 F.3d at 609–11.

## IV.  CONCLUSION

Although Richardson has offered significant evidence of an inappropriate and abusive culture among some students at Wayne High School, and of a special danger to K.R., he cannot

establish municipality liability under *Monell*. Summary judgment for the Board was thus

appropriate, and we therefore affirm.